UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEAN PAUL MITZEL TTEE DGI HOLDINGS 401K, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>KIRKLAND LAKE GOLD LTD. and ANTHONY P. MAKUCH,<br><br>                    Defendants. | Case No.<br><br><br>CLASS ACTION<br><br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br>JURY TRIAL DEMANDED |

Plaintiff DEAN PAUL MITZEL TTEE DGI HOLDINGS 401K ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's undersigned counsel, hereby brings this Class Action Complaint for Violation of Federal Securities Law ("Complaint") against Kirkland Lake Gold Ltd. ("Kirkland" or the "Company") and Anthony P. Makuch, Kirkland Chief Executive Officer ("CEO") and President, based upon, *inter alia*, the investigation conducted by and under the supervision of Plaintiff's counsel, which included a review of the Company's public documents, conference calls, and announcements, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Company, analysts' reports and advisories about the Company and readily obtainable information.  Plaintiff's counsel's investigation into the matters alleged herein is ongoing and many relevant facts are known only to, or are exclusively within the custody or control of, the Company and Anthony P. Makuch. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired Kirkland securities between January 8, 2018, and November 25, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violation of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Kirkland is a Canadian limited liability company headquartered in Toronto, Ontario.  Kirkland owns and operates gold mines in Canada and Australia.  Over the years, Kirkland has established itself as the top leader among gold producers, mainly based on its ultra-low all-in sustaining costs as well as its focus on high quality underground mines.  Kirkland's regulatory filings and other public representations particularly highlight Kirkland's all-in sustaining costs, which averaged about $564 per ounce, representing half of the global average for other gold miners.  Additionally, Kirkland frequently touted the high quality of its underground mines, reporting average reserve grade of 18.5 g/t as compared to other gold mines with an average grade of approximately 1 g/t.  These and other metrics are important performance indicators that investors rely on in making their investment decisions.

3.      Upon information and belief, leading up to November 25, 2018, Kirkland was considering acquiring Detour Gold Corporation ("Detour"), a Canadian exploration and mining company.  Kirkland's acquisition efforts and Detour's identity were undisclosed to Kirkland's investors.  Detour was an underperforming gold miner, one third of the size of Kirkland who consistently recorded significantly worse performance metrics, including high all-in sustaining costs and a low average reserve grade.  Detour's costs were more than double of Kirkland's, and

well above the average for other gold miners. Additionally, Detour's reserve grade was nearly twenty-fold below Kirkland's.

4.       On November 25, 2019, after months of active negotiations between Kirkland and Detour, the Company announced the acquisition of Detour in all stock deal valued at $3.68 billion. Via this news, investors first learned that over the course of several months, Kirkland was trading at artificially inflated levels. Investors have realized that the real value of Kirkland is one which reflected Kirkland's transformation from an ultra low-cost, high-grade producer to a larger producer with higher costs and lower grades. Investors thus learned that Kirkland's rosy projections, guidance, and plans, promising to deliver low-cost, high-grade mining were false and unsustainable in the light of the impending acquisition of Detour, which only the Company executives knew of.

5.       The Company's surprise transition caused a precipitous decline in the price of Kirkland's shares, which fell 17%, to close at $39.44 per share on November 25, 2019, on unusually high trading volume. Several securities analysts downgraded Kirkland's rating and significantly lowered the Company's price target.

6.       Throughout the Class Period, Defendants made materially false and misleading statements, and failed to disclose material adverse facts about the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that: (i) Kirkland lacked adequate internal controls over financial reporting, especially as it related to its projections of risks, reserve grade, and all-in sustaining costs; (ii) as a result of the known, but undisclosed, impending acquisition of Detour, the Company's projections relating to its risks, reserve grade, and all-in sustaining costs were false and misleading; (iii) the Company's financial statements and projections were not fairly presented

3

in conformity with International Financial Reporting Standards ("IFRS"); and (iv) based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company's business, operations, and prospects and/or lacked a reasonable basis and omitted material facts.

7.    As a result of Kirkland's wrongful acts and omissions, and the precipitous decline in the market value of Kirkland's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.    Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Kirkland conducts business in this Judicial District. Pursuant to Kirkland's 2019 annual report (SEC Form 40-F), as of December 31, 2019, there were 209,624,480 shares of the Company's common stock outstanding.  Kirkland's common stock trades on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Kirkland's common stock located within the U.S., some of whom undoubtedly reside in this judicial district.

11.    In connection with the acts alleged in this Complaint, Kirkland, directly or indirectly, used the instrumentalities of interstate commerce, including interstate wires, U.S. Postal Service mail, wireless spectrum, and the national securities exchange.

4

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Kirkland securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Kirkland is a Canadian company with a principal place of business at 200 Bay Street #1320, Toronto, ON M5J 2J1, Canada.  Kirkland shares trade on the NYSE under the ticker symbol "KL."  Defendant Kirkland, together with its subsidiaries, engages in mining and processing of gold.  The Company's gold production and exploration activities are carried out principally in Canada and Australia.

14.     Defendant Anthony P. Makuch ("Makuch") served as the Company's CEO and President since July 18, 2016.

15.     Defendant Makuch possessed the authority to control the contents of statements made by Kirkland in the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Makuch was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Due to his position with Kirkland, and his access to Kirkland's material information that was unavailable to the public, Makuch knew that the adverse facts described herein were not disclosed to and were being concealed from investors.  Makuch is liable for the false statements and omissions alleged herein.

## SUBSTANTIVE ALLEGATIONS

### A.     Background—The Company and its Mining Strategy

16.     Kirkland is a gold mining and exploration company that focuses on the acquisition, development, and exploration of gold mining properties.  Kirkland's global operations are located

in low-risk, Tier-1 mining jurisdictions, including Canada and Australia, which provide favorable government policies and geological attractiveness. Prior to its acquisition of Detour, the Company's production was anchored by two high-quality cornerstone assets, including the high-grade, low-cost underground mining operations in Macassa mine located in northeastern Ontario, Canada and the Fosterville mine, located in the state of Victoria, Australia. Also contributing to the Company's gold production is the Company's Holt Complex located in the northeastern Ontario and operations in Northern Territory of Australia.

17. At all relevant times, Kirkland prided itself on delivering superior value to shareholders by maintaining a position within the mining industry as a "sustainable, growing low-cost gold producer." The Company's presentations and public announcements uniformly highlight Kirkland's high-quality flagship assets and its ability to maintain all-in sustaining costs at ultra-low levels. In 2014, the Company adopted a new mining strategy, which was to focus on lower tonnage and higher-grade mining. Since its implementation, Company executives readily attributed Kirkland's record production results to the revamped grade-driven strategy.

18. Over the years, Kirkland has established itself as the top leader among gold producers with record revenues, ultra-low all-in sustaining costs, and a focus on high-reserve grade mining. For example, during the fiscal year 2019, Kirkland reported consolidated average all-in sustaining costs of $564 per ounce, which is half of the global average all-in sustaining costs of all gold mining companies. Similarly, Kirkland's average reserve grade of 18.5 g/t compares extremely favorably to the global average of all mines, which slightly exceeded 1.06 g/t.

**B.     Background—Gold Mining Industry**

19. Gold mining is a global business with operations on every continent, except Antarctica. Gold is extracted from mines of widely varying types and scale. Open-pit mining is a surface mining technique of extracting rock or minerals found near the earth's surface, and

therefore, does not require tunneling into the earth.  In contrast, underground mining is an excavation technique for ore bodies that lie a considerable distance below the surface.

20.    Gold mining companies, including Kirkland, use several important metrics, which reflect the quality and quantity of their gold mining and exploration activities.  These metrics are standardized measures of the gold mining companies' performance, and as such, are critically important for investors in their decision to invest in gold mining companies.  These metrics include, *inter alia*, the all-in sustaining costs and a reserve grade.

21.    "All-in sustaining costs" is an inclusive standardized metric established by the World Gold Council to reflect the cost of gold mining used by mining companies and is represented in dollars per ounce of gold.  All-in sustaining costs provides for a better understanding of gold mining economics for mining professionals and investors.  Reserve grade refers to the average proportion of gold contained in the ore and is represented in grams per metric ton (g/t).  The World Gold Council defines a high-quality underground mine as having a gold ore density between 8 and 10 g/t, while a low-quality underground mine has a gold ore density of 1 to 4 g/t.  All-in sustaining costs and reserve grade are important metrics in the mining valuation used by mining Companies and investors.  Accordingly, Kirkland's regulatory financial reporting, accounting statements, and public presentations all incorporate, and highlight, Kirkland's all-in sustaining costs and reserve grade.

**C.    The Class Period Begins—Kirkland Contemplates
       Potential Acquisition of Detour**

22.    In mid-2018, Detour, a Canadian gold mining company with operations in Abitibi gold belt in northeastern Ontario, found itself under fire by Detour's largest shareholder, Paulson & Co. Inc. ("Paulson"), who criticized Detour's management for its inability to properly manage shareholder assets.  Paulson, who owned a 5.4% stake in Detour, called on the company to explore

strategic alternatives, including a sale to would-be buyers willing to pay a fair price for the company.

23.     During the months leading to November 2019, Kirkland began to contemplate the acquisition of Detour, a fact which was known to the Company executives, yet undisclosed to Kirkland's investors.  Unfortunately for the unsuspecting public, Detour was an underperforming gold miner, one third of the size of Kirkland with significantly worse performance metrics, declining revenues, and frequent turnover at the company's highest ranks.  For example, Detour's all-in sustaining costs on a trailing-twelve-month basis was $1,121 per ounce, nearly double the amount of Kirkland's.  As to the quality of its mines, Detour operated a single low-grade open-pit mine (as contrasted with Kirkland's high-grade underground mines), with a reserve grade of 0.96 g/t, a far cry from Kirkland's average grade of 18.5 g/t.

24.     In light of the cratering differences between the companies, the acquisition of Detour presented a real and imminent threat to Kirkland's ability to continue in its leading role as ultra low-cost, high-grade gold producer.  Detour's acquisition would immediately dilute Kirkland's average reserve grade and would significantly increase its all-in sustaining costs, rendering Kirkland a less valuable gold miner than Kirkland held itself out to be.  Thus, the impending acquisition threatened to drastically change the profile of the Company, which is something that investors neither knew, or could have reasonably anticipated in light of Kirkland's rosy projections and promises.

25.     Notwithstanding the imminent threat that Detour's acquisition presented to Kirkland, the Company continued to solidify reasonable investors' expectations that Kirkland would stick to grade driven mining strategy and remain the leader in low-cost, high-grade mining. During the months leading to the announcement of Detour acquisition, and while Kirkland was

actively negotiating with Detour, the Company executives boasted of the Company's record revenues, all-in sustaining costs, and reserve grade, and repeatedly confirmed that these trends were expected to continue in the future.  Indeed, Kirkland's "Long-Term Outlook" incorporated in several of its regulatory filings reiterated that "growing low-cost, high-margin production" was one of Kirkland's primary goals.

26.     Kirkland's repeated reporting of these key metrics communicated to reasonable investors that Kirkland attached considerable significance to these metrics.  Consequently, reasonable investors expected that these critical indicators would remain the same, or that the Company would announce any anticipated significant change.  Kirkland's projections that it would remain an ultra low-cost, high-grade producer were unrealistic in light of its plans to incorporate Detour into its operations, and were therefore false and misleading at the time these projections were made.  As a result, during the time Kirkland negotiated with Detour, Kirkland's securities traded at artificially inflated levels, which failed to reflect the true value of Kirkland, which was about to transform from an ultra low-cost, high-grade producer to a higher-cost, lower grade producer, and lose its leading position on the market.

## MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

27.     The Class Period begins on January 8, 2019.  On that day, Kirkland published a press release filed with the SEC as exhibit 99.1 to a Form 6-K, in which the Company announced record production of gold in the fourth quarter of 2018 ("Q4 2018") and full year of 2018 ("2018"). The Company reported producing 230,993 and 723,477 ounces of gold in Q4 2018 and 2018, respectively.  In addition, Defendant Makuch noted in the press release that Kirkland "embarked on a program of growth that could see the Company achieve a million ounces of annual, ***low-cost***

***gold production as early as 2021*.**"  The press release closed by reiterating that the "Company is anchored by two high-grade low-cost operations . . . ."

28.     On January 14, 2019, Kirkland hosted an Investor Day with analysts and investors to discuss the Company's past performance.  During the meeting, Defendant Makuch repeatedly assured analysts and investors of the Company's plans of continuing to produce gold at low all-in sustaining costs, stating in pertinent part, as follows:

> ***And one of the most important things we can do, we can produce a lot of gold, we can do it at low cost, low operating cost*,** all-in sustaining cost, and we can spend a lot of money on exploration, et cetera.

> \* \* \*

> And with the growth in production, you're seeing a significant improvement in unit costs both in cash costs and in all-in sustaining costs. And you get a sense, and especially as our Q4 comes out, you get a sense of what we're giving for guidance, what we gave for guidance in 2018. ***And I'll show you a little bit of guidance for 2019 where we see definitely we have an opportunity to beat our full-year guidance in 2018*** and in some ways get a sense of where our guidance sits in 2019 and what the opportunity is for seeing further share price performance.

> \* \* \*

> What's our guidance then for 2019? And you see basically over a 10% improvement in production year-over-year. ***It's a 10% to 15% reduction in unit cash costs and all-in sustaining costs.*** And I'll say that as we come into 2019, we'll give a sense that we feel very comfortable in terms of the guidance we've given and in terms of the fact that we've given guidance that we have the opportunity to definitely meet and potentially beat the guidance, sensitizing it.

> \* \* \*

> We're still responsibly investing in our mines, but we're able to, in the end, ***our unit all-in sustaining cost per ounce is going to come down*** because our production is going up during the same period of time.

29.     During the same Investor Day, Defendant Makuch reflected on the M&A activity in the industry, misinforming investors that Kirkland's minimum standards for acquiring a non-

core asset would require certain levels of production and all-in sustaining costs, stating, in relevant

part, as follows:

> But you've got to recognize why are they for sale, and we have — *we've set some standards in terms of Kirkland Lake Gold. Minimum production levels has [sic] to be over 100,000 ounces, it has to be meaningful level. I might even say more than 100,000 ounces but it's got to be meaningful level of production. Talk about case cost of $650 an ounce or under you can get from that asset; and all-in sustaining cost of $950 an ounce or under. I mentioned that those two numbers are important* because you can't let the cash cost get too high because you have to have money available to invest in new equipment, to invest in infrastructure, to invest in exploration — in sustainable exploration to maintain the business. So, that's important to us. *And we need to see that. As we need to stay at $950* because we have to have a minimum return and minimum risk on the company and if we talk about a 15% hurdle rate, then we're kind of good to $1.050 gold.

30.     In another Investor Day, held on January 17, 2019, Defendant Makuch reiterated

Defendants' commitment to keeping the Company's production cost as low as possible, stating, in

relevant part: "***Cost, we're one of the lowest cost producers***. And by the way this is what the cost

here is total $397 cash costs, and $738 all-in sustaining costs for the business."  As to the quality

of its mines, Makuch promised investors to reduce cost and increase quality over the next three

years: "We have lots of catalysts coming up in the company, and we've had very high grade mines.

***So our margin is much higher. It's much higher year-over-year. So these are valuable — more***

***valuable ounces year-over-year. So this is creating new value.***"

31.     On January 25, 2019, Kirkland participated at a CIBC Whistler Institutional

Conference, during which Defendant Makuch assured investors that the Company's trend of

declining all-in sustaining costs and increasing margins per ounce of gold was going to continue

through 2020 and 2021:

> You can see this is showing our guidance and some of the real big value drivers in Kirkland Lake Gold, and this is just our guidance for 2019. So you saw our production is up almost 10%. ***You see our cash costs, it's coming down 10% to 15%, and all-in sustaining cost coming down 10% to 15%, and get a sense that I showed you — we don't show this for 2020 or 2021 but the trend continues in***

**terms of production up, the trend continues in terms of cash cost and all-in sustaining cost coming down.**

32.     Additionally, Defendant Makuch reiterated that Kirkland was "leading the industry" in terms of "all-in sustaining costs."  When asked about potential M&A activity to leverage Kirkland's share price, Defendant Makuch denied any potential acquisitions, stating:

> **So, to do — to use our paper just to — for this to grow, we don't need to do that to grow.** We have internal growth, and we're really financing our internal — we're growing the company through diamond drill bit, through development, and through lowering unit cost and improvements.

33.     As *Bloomberg* headlines from the next day reflected, the message Defendant Makuch communicated to the investors was that "Kirkland Lake Gold Doesn't Need Acquisitions to Grow."

34.     On February 21, 2019, Kirkland published a press release attached as exhibit 99.1 to an SEC Form 6-K, informing investors that the Company revised and increased its consolidated three-year production guidance and improved its unit-cost guidance for 2019.  The key highlight included in the Company's press release was lowering its all-in sustaining costs to a target of $520-$560 per ounce from a previous range of $630-$680 per ounce.  Additionally, its consolidated mineral reserve grade was increased to 15.8 g/t.

35.     On February 22, 2019, Kirkland filed its Consolidated Financial Statements for the years ended December 31, 2018 and 2017, on SEC Form 6-K.  Appended to that filing as exhibit 99.2 was the Management's Discussion & Analysis ("MD&A"), in which the Company reported that its all-in sustaining costs per ounce sold in Q4 2018 averaged $567 per ounce, a 31% improvement from $816 per ounce in Q4 2017 and 12% better than $645 per ounce the previous quarter.  As to full year 2018, the Company reported all-in sustaining costs at $685 per ounce, which was better than its 2018 revised guidance of $735-$760 per ounce.  Additionally, the

Company touted the average mineral reserve grade of its mines, stating that it achieved "overall average grade for the Company of 13.9 g/t, 42% higher than 9.8 g/tin 2017."  Under the "*Long-Term Outlook*" section, the Company reiterated its commitment to "achieving high levels of operational excellence, effectively allocating capital and ***growing low-cost, high-margin production***."

36.    Also on February 22, 2019, in connection with the filing of the Consolidated Financial Statements, Defendant Makuch filed the following certification:

**I, Anthony Makuch, Chief Executive Officer of Kirkland Lake Gold Ltd**., certify the following:

1. **Review**: I have reviewed the AIF, if any, annual financial statements and annual MD&A, including, for greater certainty, all documents and information that are incorporated by reference in the AIF (together, the "annual filings") of Kirkland Lake Gold Ltd. (the "issuer") for the financial year ended December 31, 2018.

2. **No misrepresentations**: Based on my knowledge, having exercised reasonable diligence, the annual filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, for the period covered by the annual filings.

3. **Fair presentation**: Based on my knowledge, having exercised reasonable diligence, the annual financial statements together with the other financial information included in the annual filings fairly present in all material respects the financial condition, financial performance and cash flows of the issuer, as of the date of and for the periods presented in the annual filings.

4. **Responsibility**: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

5. **Design**: Subject to the limitations, if any, described in paragraphs 5.2 and 5.3, the issuer's other certifying officer(s) and I have, as at the financial year end

(a) designed DC&P, or caused it to be designed under our supervision, to provide reasonable assurance that

I. material information relating to the issuer is made known to us by others, particularly during the period in which the annual filings are being prepared; and

II. information required to be disclosed by the issuer in its annual filings, interim filings or other reports filed or submitted by it under securities legislation is recorded, processed, summarized and reported within the time periods specified in securities legislation; and

(b) designed ICFR, or caused it to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with the issuer's GAAP.

5.1 **Control framework**: The control framework the issuer's other certifying officer(s) and I used to design the issuer's ICFR is the COSO framework.

5.2 **ICFR** - material weakness relating to design: N/A

5.3 **Limitation on scope of design**: Items A. and B. N/A respectively

6. **Evaluation**: The issuer's other certifying officer(s) and I have

A. evaluated, or caused to be evaluated under our supervision, the effectiveness of the issuer's DC&P at the financial year end and the issuer has disclosed in its annual MD&A our conclusions about the effectiveness of DC&P at the financial year end based on that evaluation; and

B. evaluated, or caused to be evaluated under our supervision, the effectiveness of the issuer's ICFR at the financial year end and the issuer has disclosed in its annual MD&A

III. our conclusions about the effectiveness of ICFR at the financial year end based on that evaluation; and

IV. for each material weakness relating to operation existing at the financial year end

A. a description of the material weakness;

B. the impact of the material weakness on the issuer's financial reporting and its ICFR; and

C. the issuer's current plans, if any, or any actions already undertaken, for remediating the material weakness.

7. **Reporting changes in ICFR**: The issuer has disclosed in its annual MD&A any change in the issuer's ICFR that occurred during the period beginning on January 1, 2018 and ended on December 31, 2018 that has materially affected, or is reasonably likely to materially affect, the issuer's ICFR.

8. **Reporting to the issuer's auditors and board of directors or audit committee**: The issuer's other certifying officer(s) and I have disclosed, based on our most recent evaluation of ICFR, to the issuer's auditors, and the board of directors or the audit committee of the board of directors any fraud that involves management or other employees who have a significant role in the issuer's ICFR.

Date: February 21, 2019

37.     The same certification was filed by Defendant Makuch in connection with the Company's filing of its interim financial results on February 22, 2019, May 7, 2019, and July 31, 2019 (*see* ¶¶ 35, 42, 44).

38.     Following Kirkland's publication of its Consolidated Financial Statements, the Company held an Earnings Call with analysts on the same day to discuss the Company's performance and operations during the fourth quarter of 2018.  During the call, Defendant Makuch noted that the Company's "all-in sustaining costs improved 16% year-over-year [and] margins improved substantially as well."  As to the average grade, Makuch informed investors that "[g]rade for the company in the quarter was 17.8 grams per tonne, [Kirkland's] highest level ever." Makuch further stated:

> I guess we got to put 2018 behind us now, and let's see what are we doing going forward and coming into 2019, you see we've already started the year very strong, and we've revised our guidance and we're on track for 1 million ounces of production and *at that low cost of production as well*. So lowering costs means we're going to improve our earnings, *so we're going to continue to see growth in earnings and the industry leading earnings to that point*. And we're going to generate strong free cash flow and accompany well-financed solid balance sheet.

39.     When asked about Kirkland's M&A activity, Defendant Makuch denied any appetite for acquiring another company, stating, in relevant part:

So that's the number one driver of our growth *instead of going out and trying to buy that kind of company. We're going to continue to grow with the diamond drill bit. We want to continue to grow with development of our own assets and organically*, and then we're going to look seriously at how we give value back to our shareholders.

40.     On April 2, 2019, Kirkland filed its annual report ("2018 Annual Report") for the year ended December 31, 2018, which was appended as exhibit 99.1 to an SEC Form 40-F.  In the 2018 Annual Report, the Company reiterated that its production profile is "anchored by two high-grade, low cost operations."

41.     In the MD&A appended as exhibit 99.3 to the 2018 Annual Report, Kirkland touted its all-in sustaining costs, reporting that it averaged $685 per ounce, $127 per ounce or 16% per ounce better than the previous year, a figure that outperformed the Company's improved full-year 2018 guidance of $735-$760 per ounce.   As to its mineral reserves, the Company reported averaging grade of 15.8 g/t, an increase of 24% from an average grade of 11.1 g/t on December 31, 2017.   Under the "*Long-Term Outlook*" section, Kirkland reiterated its commitment to "achieving high levels of operational excellence, effectively allocating capital and *growing low-cost, high-margin production*."   Appended to the 2018 Annual Report as exhibits 99.4-7 are certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendant Makuch certified that the 2018 Annual Report "does not contain any untrue statements of a material fact or omit[s] to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading" and that the Company has adequate and sufficient internal controls over financial reporting.

42.     On May 7, 2019, Kirkland filed its consolidated interim financial results with an SEC Form 6-K.  Appended to that filing was the MD&A for the three months ended March 31, 2019 and 2018, wherein the Company again touted its all-in sustaining costs, reporting that it

averaged $560 per ounce, or 33% better than first quarter ("Q1") 2018, mainly due to "higher average grades on sales volumes compared to the prior year's first quarter."  Under the "***Longer-Term Outlook***" section, the Company reiterated that its excellence was anchored in "effectively allocating capital and ***growing low-cost, high-margin production***."

43.      The next day, on May 8, 2019, during a Q1 2019 Earnings Call to discuss the Company's financial and operational results for the quarter, Defendant Makuch forecasted that the Company would further decrease its all-in sustaining costs, stating, in relevant part, as follows:

> ***We feel well on our way to achieving those numbers [meaning $285 to $305 guidance] and potentially even beating those numbers*** as the year progresses, and all on sustaining cost of $520 to $560 an ounce. Similarly, we have industry leading earnings and earnings per share as outlined previously. . . . ***Our operating costs are coming down in terms of per ounce basis*** that means we've got higher margin ounces more value. So there's a lot of areas where we're focused on creating value for our shareholders.

44.      On July 31, 2019, Kirkland released its Consolidated Financial Statements, filed with an SEC Form 6-K.  Appended to that filing as exhibit 99.2 was the MD&A, in which the Company reported that its average all-in sustainable cost per ounce was $638 per ounce, or 16% better than the second quarter ("Q2") 2018 average of $757 per ounce, mainly due to "impact of higher average grades compared to the prior year's second quarter."  As to its mineral reserve grade, the Company reported average grade of 18.4 g/t, a 40% improvement from its previous 13.1 g/t for the same period a year earlier.  Under the "***Long-Term Outlook***" section, the Company reiterated its commitment to "achieving high levels of operational excellence, effectively allocating capital and ***growing low-cost, high-margin production***."

45.      During a Q2 2019 Earnings Call held on the same day to discuss the Company's financial and operational results during the quarter, Defendant Makuch commented on the Company's costs, stating, in relevant part, as follows:

Macassa is very well positioned to achieve its production guidance and it currently sits better than guidance on cash costs. We fully expect to achieve our consolidated guidance of 950,000 to 1 million ounces this year at cash cost of $300 per ounce *and all-in sustaining cost between $520 per ounce and $560 per ounce*.

\* \* \*

Kirkland continue [*sic*] to have superior performance and we have strong value creation for our shareholders throughout the year and we see as the year progresses continued value creation. We are definitely on track to achieve our 2019 guidance of 950,000 to 1 million ounces, operating cash costs $285 to $305 per ounce and *all-in sustaining cost of $520 to $560 per ounce*. We have industry-leading earnings and earnings per share. We continue to build our cash position, which we internally fund our growth.

46.     Notably, when asked about Kirkland's perspective over the next couple of years, Defendant Makuch noted that Defendants did not plan on diluting grade mineralization, stating: "*We don't want to take away from any of these to put lower grade mineralization into the mill So really focusing on optimizing the operation and not mining stuff that potentially would not be ore in the current forms*."

47.     In Kirkland's presentation, prepared in connection with the Precious Metals Summit on September 11, 2019, the Company highlighted "low-cost production" as one of the key factors driving its outperformance.  The slide presentation featured a comparison between Kirkland and its peers, showing Kirkland as having the "superior" unit cost performance of $570 per ounce, as compared to its closest competitor, Newcrest, who reported all-in sustaining costs of $769 per ounce.  As to its grade mineralization figures, Kirkland's presentation featured several slides highlighting increasing reserve grade in its existing mines.

48.     On November 6, 2019, less than a month before the acquisition of Detour was publicly announced, the Company filed its Consolidated Interim Financial Statements with an SEC Form 6-K.  Appended to that filing was the MD&A for the three and nine months ended September 30, 2019 and 2018, wherein the Company again touted its all-in sustaining costs, reporting that it

averaged $562 per ounce, or 13% better than third quarter ("Q3") 2018, mainly due to "lower operating cash costs and sustaining capital expenditures on a per ounce sold basis."  As to its reserve grade, the Company reported that the average grade improved from 13.3 g/t to 18.8 g/t quarter-over-quarter.  Under the "***Longer-Term Outlook***" section, the Company reiterated that its excellence was anchored in "effectively allocating capital and ***growing low-cost, high-margin production***."

49.     During an Earnings Call held on the same day, a Scotiabank analyst asked for a forecast for the upcoming months of 2020.  Defendant Makuch provided the following update:

> [I]n terms of framing a guidance for 2020 then clearly from our end we want to be talking about ***production levels and in cost metrics***. In terms of what we're looking for here as it's clearly in operation of significant scale or at least a pathway to that in that sort of ***plus 100000 ounce per annum production profile with cost metrics*** that make sense to us and the ability to generate cash flow. ***So there are criteria that we're looking for and we're working through our own internal processes around to that now***.

50.     As to reserve grade, Defendant Makuch highlighted the performance of its two high-grade low-cost mines as delivering "exceptional results [with] record production of 158,000 ounces driven by continued improvements in the average head grades as well as higher tonnage compared to the previous quarter."

51.     The above statements identified in ¶¶ 27-32 and 34-50 were materially false and misleading, and failed to disclose material adverse facts about the Company's business, operational, and compliance policies.  Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that: (i) Kirkland lacked adequate internal controls over financial reporting, especially as it related to its projections of risks, reserve grade, and all-in sustaining costs; (ii) as a result of the known, but undisclosed, impending acquisition of Detour, the Company's projections relating to its risks, reserve grade, and all-in sustaining costs were false

and misleading; (iii) the Company's financial statements and projections were not fairly presented in conformity with IFRS; and (iv) based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company's business, operations, and prospects and/or lacked a reasonable basis and omitted material facts.

## THE TRUTH BEGINS TO EMERGE

52.     On November 25, 2019, following a months-long campaign of rosy projections relating to the Company's key metrics, Kirkland announced that it entered into a definitive agreement to acquire all of the outstanding securities of Detour for $3.68 billion.  On this news Kirkland's shares declined 17%, to close at $39.44 on November 25, 2019, on unusually high trading volume.

53.     Kirkland's announcement received chilly reception from analysts and investors alike who were baffled by the deal's economics; while Kirkland's reserve grades before the deal were over 25 g/t on a consolidated basis, Detour's reserve grade was 0.96 g/t, and therefore extremely dilutive of Kirkland's reserve grade.   Additionally, the deal had the effect of significantly increasing Kirkland's all-in sustaining costs.  Prior to the deal, Kirkland's all-in sustaining costs for the first nine months was $584 per ounce, while Detour's all-in sustaining costs were nearly twice that amount, $1,121 per ounce.  Thus, the acquisition of Detour represented a 30% jump in Kirkland's consolidated all-in sustaining costs.  Once investors learned of this unexpected, and undisclosed, transformation, the price of Kirkland shares dropped by 17%, to a level that reflected the Company's true market value.

54.     Several securities analysts, equally surprised by the deal, downgraded Kirkland's ratings and lowered the Company's price target, while others criticized the transaction.  For example, CIBS analyst Cosmos Chiu noted the "deal was unexpected, as it [took Kirkland's] current focus in high-grade underground mines to a lower grade open-pit deposit."

55.     Furthermore, National Bank Financial analyst, Mike Parkin, cut Kirkland to underperform due to "high grade dilution."  According to Parkin, lower valuation was likely, as Kirkland's assets "will no longer be tied solely to high grade underground mines."

56.     Cannacord analyst Tom Gallo called the acquisition a "head scratcher" and downgraded Kirkland due to increased risk and lower valuation.

57.     After the close of the Class Period, on February 20, 2020, the Company announced a surprise capital spent of $500 million, which the Company allocated to drilling costs at Detour. On this news, the Company's shares declined to $34.79 per share, down 7.1% from its closing price the prior day.

58.     On May 6, 2020, Kirkland filed its Consolidated Financial Statements with an SEC Form 6-K.  Appended to that filing was the MD&A for the three months ended March 31, 2018 and 2019, wherein the Company reported average all-in sustaining costs of $776 per ounce in Q1 2020 as compared to $560 per ounce in Q1 2019 and $512 per ounce the previous quarter, explaining that the increase was due to Detour's average all-sustaining cost of $1,108.  Notably, the "Longer-Term Outlook" section was changed to no longer represent that that Company is committed in "effectively allocating capital ***and growing low-cost, high-margin production***," as it did during the Class Period, and instead, provided that the Company was committed to "effectively allocating capital ***and increasing the profitability and value of its operations.***"

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on Plaintiff's own behalf and as a representative of a class consisting of all those who purchased or otherwise acquired Kirkland securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendant Makuch, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant Makuch has or had a controlling interest.

60.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable.  Throughout the Class Period, Kirkland shares were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be readily identifiable from information and records in the possession of Defendants or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61.     Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and members of the Class sustained damages from the same wrongful conduct of Defendants.  The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws described herein.

62.     Plaintiff will fairly and adequately protect and represent the interests of members of the Class.  Plaintiff is an adequate representative of the Class and has no interest that is adverse to the interests of absent Class members.  Plaintiff has retained counsel competent and experienced in class action litigation, including class actions in the financial services industry.

63.     Common questions of law and fact exist as to all members of the Class, which predominate over questions affecting solely individual members of the Class.  These common questions of law include, without limitation:

- whether statements made by Kirkland and Defendant Makuch to investors during the Class Period included misrepresentations of material facts about the financial condition, operations and oversight of operations at Kirkland;

22

- whether Kirkland and Defendant Makuch acted knowingly or recklessly in issuing false and misleading statements or omitting material information that would correct the misstatements;

- whether Kirkland's and Defendant Makuch's acts as alleged herein constituted violations of the federal securities laws;

- whether the prices of Kirkland shares during the Class Period were impacted by Kirkland's and Defendant Makuch's conduct described herein;

- the injury suffered by Plaintiff and Class members; and

- the appropriate measure of damages suffered by Plaintiff and Class members.

64.     A class action is superior to other methods for the fair and efficient adjudication of the controversy in this action because joinder of all Class members is impracticable.  Treatment as a class will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.

65.     Class treatment will also permit the adjudication of claims by many Class members who could not afford individually to litigate claims such as those asserted in this Complaint.  The cost to the court system of adjudication of such individualized litigation would be substantial.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Kirkland and Defendant Makuch.

66.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## FRAUD ON THE MARKET DOCTRINE

67.     The market for Kirkland shares was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose alleged herein, Kirkland's shares traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's shares relying upon the integrity of the market price of Kirkland shares and market information relating to Kirkland, and have been damaged thereby.

68.     During the Class Period, the artificial inflation of Kirkland's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Kirkland's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Kirkland's financial condition and its business, operations, and prospects, thus causing the price of the Company's shares to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Kirkland shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Kirkland shares at such artificially inflated prices, and each of them has been damaged as a result.

69.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine as:

- Kirkland and Defendant Makuch made public misrepresentations or failed to disclose material facts during the Class Period;

- these misrepresentations and omissions were material to Plaintiff and the Class;

- Kirkland shares were traded on the NYSE and were covered by numerous analysts;

- Kirkland shares were liquid and traded with significant volume during the Class Period;

- the misrepresentations and omissions alleged herein would likely induce a reasonable investor to misjudge the value of the Kirkland shares; and

- Plaintiff and Class members purchased and/or sold Kirkland shares between the time Kirkland and Defendant Makuch misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

70.     As a result of the foregoing, the market for Kirkland shares promptly digested current information regarding Kirkland from all publicly available sources and reflected such information in Kirkland's share price.  Under these circumstances, all purchasers of Kirkland's securities during the Class Period suffered similar injury through their purchase of Kirkland's securities at artificially inflated prices.  Thus, a presumption of reliance applies.

71.     Accordingly, Plaintiff and Class members are entitled to a presumption of reliance upon the integrity of the market.

72.     In the alternative, Plaintiff and Class members are entitled to a presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456 (1972), because Defendants omitted material information during the Class Period violating a duty to disclose such information as described above.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have

considered them important in making investment decisions.  Given the importance of the Class
Period material misstatements and omissions set forth above, that requirement is satisfied here.

## LOSS CAUSATION

73.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused
the economic loss suffered by Plaintiff and the Class.

74.     During the Class Period, Plaintiffs and the Class purchased Kirkland securities at
artificially inflated prices and were damaged thereby.   The price of Kirkland securities
significantly declined when the misrepresentations made to the market, and/or the information
alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,
causing investors' losses.

## NO SAFE HARBOR

75.     The statutory safe harbor provided for forward-looking statements under certain
circumstances does not apply to the allegedly false statements and omissions pled in this
Complaint.  The statements alleged to be false and misleading herein all relate to then-existing
facts and circumstances.  To the extent certain of the statements alleged to be false and misleading
may be characterized as forward-looking, they were not adequately identified as "forward-
looking" statements when made, and were not accompanied by meaningful cautionary statements
identifying important factors that could cause actual results to differ materially from those in the
purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor
is intended to apply to any forward-looking statements pled herein, Kirkland and Defendant
Makuch are liable for those false and misleading forward-looking statements because at the time
each of those forward-looking statements was made, the particular speaker knew that the particular
forward-looking statement was false and misleading, and/or the forward-looking statement was

authorized and/or approved by an executive officer of Kirkland who knew that those statements were false and misleading when made.

## SCIENTER ALLEGATIONS

76.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Kirkland and Defendant Makuch, by virtue of their receipt of information reflecting the true facts regarding Kirkland, their control over, and/or receipt and/or modification of Kirkland's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Kirkland, participated in the fraudulent scheme alleged herein.

77.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including Defendant Makuch.

78.     The Individual Defendants, because of their positions with Kirkland, made and/or controlled the contents of the Company's public statements during the Class Period.  Each Defendant was provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information, these Defendants knew or recklessly disregarded that the adverse facts

specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were materially false and misleading.  As a result, each of these Defendants is responsible for the accuracy of Kinross's corporate statements and are therefore responsible and liable for the representations contained therein.

79.     Additionally, according to public sources, between August 2019 and October 2019, Eric Sprott, former Chairman of the Board of Kirkland, sold $142 million worth of Kirkland shares. During the last twelve months, ending in October 2019, other insiders have collectively divested 7,141,178 shares for total proceeds of approximately $280 million.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

80.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

81.     During the Class Period, Kirkland and Defendant Makuch, individually and in concert, directly or indirectly, disseminated or approved false statements which they knew or deliberately disregarded in that they contained misrepresentations and failed to disclose material facts to make the statements made not misleading.

82.     Kirkland and Defendant Makuch violated Section 10(b) of the Exchange Act and Rule 10b-5 by: (a) making false statements of material facts or omitting to state material facts needed to make the statements not misleading; or (b) engaging in acts and practices that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Kirkland securities during the Class Period.

83.     Kirkland and Defendant Makuch acted with scienter because they knew that the statements issued in the name of Kirkland were materially false and misleading; knew that these statements would be disseminated to investors; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of these statements as primary violations of securities laws.  Kirkland and Defendant Makuch, through receipt of information reflecting true facts about Kirkland, their control over, and/or receipt of or modification to Kirkland's allegedly materially misleading statements, which made them aware of Kirkland's confidential proprietary information, participated in the fraudulent scheme complained of herein.

84.     Defendant Makuch had actual knowledge of material omissions and/or the falseness of material statements set forth by Kirkland, and intended to deceive Plaintiff and Class members, or at a minimum, recklessly disregarded the truth through his and Kirkland's failure to ascertain and disclose the truth in statements made by him and Kirkland or other Kirkland employees to investors, including Plaintiff and Class members.

85.     Pursuant to the foregoing, the price of Kirkland securities was artificially inflated during the Class Period.  Due to their lack of knowledge of the false nature of statements made by Kirkland and Defendant Makuch, Plaintiff and Class members relied on the statements made by Kirkland and Makuch and/or the integrity of the market price of Kirkland securities during the Class Period in purchasing Kirkland securities at prices that were artificially inflated due to false and misleading statements made by Kirkland and Makuch.

86.     Were Plaintiff and Class members made aware that the market price of Kirkland securities were artificially and falsely inflated by misleading statements made by Kirkland and Defendant Makuch, and by material adverse information that Kirkland and Defendant Makuch

failed to disclose, they would not have purchased Kirkland securities at artificially inflated prices, or purchased them at any price.

87.    Based on the wrongful conducted alleged herein, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

88.    Kirkland and Defendant Makuch violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and Class members for significant damages suffered via their purchases of Kirkland securities during the Class Period.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 20(a) of the Exchange Act Against Defendant Makuch)

89.    Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

90.    During the Class Period, Defendant Makuch was involved in the management and operation of Kirkland's business affairs.  Due to his senior position, he had knowledge of adverse non-public information regarding Kirkland's non-compliance with the regulatory consent orders and false representations in connection therewith.

91.    As president and CEO of a publicly-owned company, Defendant Makuch had a duty to disseminate accurate and truthful information regarding Kirkland's financial condition and results of operations, and to correct any public statements issued by Kirkland which were materially false or misleading.

92.    Due to his position of authority at Kirkland, Defendant Makuch controlled the contents of various public filings, press releases and reports which Kirkland disseminated in the market during the Class Period.  During the Class Period, Defendant Makuch utilized his authority to cause Kirkland to execute the wrongful acts alleged herein.  Defendant Makuch was therefore a "controlling person" at Kirkland pursuant to Section 20(a) of the Exchange Act.  On this basis,

he was a participant in the unlawful conduct alleged that caused the prices of Kirkland securities to be artificially inflated.

93.     Based on the conduct described above, Defendant Makuch is liable for the violations committed by Kirkland pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands relief as follows:

A.     Certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as Class Representative;

B.     Awarding damages in favor of Plaintiff and members of the Class against Kirkland and Defendant Makuch, jointly and severally, for all damages sustained as a result of Kirkland's wrongdoing, in an amount to be proven at trial;

C.     Awarding Plaintiff and members of the Class their costs of suit, including reasonable attorneys' fees and expenses, and including expert fees, as provided by law;

D.     Awarding Plaintiff and members of the Class pre- and post-judgment interest at the maximum rate allowable by law; and

E.     Directing such further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated:  July 17, 2020                                 Respectfully submitted,

                                                                    POMERANTZ LLP

                                                                    */s/ Jeremy A. Lieberman*
                                                                    Jeremy A. Lieberman
                                                                    J. Alexander Hood II
                                                                    600 Third Avenue, 20th Floor
                                                                    New York, New York 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

Tuesday, July 7, 2020

## Kirkland (KL)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Kirkland Lake Gold Ltd. ("Kirkland" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Kirkland securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Kirkland securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Kirkland securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Dean Mitzel

**If Representing Corporation, Trust, Partnership
or other entity, Name of Entity**
DEAN PAUL MITZEL TTEE DGI HOLDINGS 401K

**Signature**

1



**Acquisitions**

## Configurable list (if none enter none)

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 13-Sep-19 | 50 | 43.50 |



(redacted)

## Full Name

Dean Mitzel

**Kirkland Lake Gold Ltd. (KL)**                                                    **Mitzel, Dean**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 9/13/2019 | 50 | $43.5000 |